# WELCH & COMPANY, Complainants,

## v.

# CENTRAL SAN CRISTOBAL, Dft.

---

San Juan, Equity, No. 940.

### EXCEPTIONS TO MASTER'S REPORT ON RENTS.

Receivership—Answer to Claims.

   1. A formal answer or objection need not be made to a claim filed in a receivership case pursuant to an order of court that all creditors of the defendant file their claims with the standing master in chancery on or before a certain date.

Master's Report—Testimony to Be Filed Therewith.

   2. Testimony taken before the master should be transcribed and filed with his report to the court, but failure to do so is not ground for exception thereto, but rather for motion to re-refer for such purpose.

Welch & Co. v. Central San Cristobal.

Leases—Receiver May Cancel—Payment of Rents.

> 3. A receiver may elect to cancel a lease of property made to defendant within a reasonable time after his entering into possession thereof, and if he does so he will be liable for the payment only of the rent due, in accordance with the lease, from the date of his possession to the date when the land is redelivered or tendered to the lessor.

Opinion filed February 24, 1916.

———

*Messrs. Francis & Soto* for petitioner Fernandez.

*Mr. Chas. Hartzell* for receiver O'Neill.

HAMILTON, Judge, delivered the following opinion:

This matter comes up on exceptions by Ernesto Fernandez filed January 7, 1915, to report of Standing Master Dabney in the matter of claim of Fernandez for rental of land formerly in the possession of Receiver A. R. O'Neill of the San Cristobal property. The facts seem to be that the grandmother of petitioner, Joaquina Coll, made a lease of the property in question to the Central San Cristobal for a period of five years, subject to renewal for a similar period. The only use which the central seems to have made of the land was to subrent to a colono and make advances to him in the usual manner, conditioned upon his grinding the cane at the central upon the usual terms. After his appointment, the receiver of Central San Cristobal considered the lease onerous, and obtained the permission of the court to cancel it. He entered into an agreement with Joaquina Coll, whereby, after gathering the current crop, the land was to

Welch & Co. v. Central San Cristobal.

be surrendered and the lease canceled. Petitioner Fernandez was then a minor and contested the right of his grandmother to make the cancelation. The matter, being presented to the court, was referred to Special Master Brown, and he reported that the grandmother in question had no right to cancel a lease favorable to the minor. This report was confirmed. As part of his report Master Brown held that the original lease was not infected by the same lack of power, insomuch as it should not be held void as between the parties to it. The claim of Fernandez for rent was subsequently referred to Standing Master Dabney, and his report, filed December 18, 1915, was that the receiver had done all in his power to cancel the lease and should not be held accountable for rent beyond the gathering of the current crop, amounting to $462.68, which he allowed. The report is excepted to.

1. A ground of exception is that, inasmuch as the receiver did not answer the petition, the master committed an error in allowing him to oppose the petition and present evidence as if he had put the petition in issue. This seeks to make proceedings upon claims in receiverships analogous to law and equity proceedings by which a claim is confessed if not formally denied. This, however, is too strict a construction. A claim is filed in a receivership proceeding and any creditor as well as receiver has the right to oppose it, and, as it is a claim not specially against any one, but against a trust fund in the hands of the court, it might well be that the court itself could, in a proper case, direct that the claim be contested. Rule 86 of this court implies that there need not be a formal contest by any one. After defining the procedure when the receiver contests a claim, it goes on to say that after ten days, even if the claim is

not contested, it shall be *ipso facto* referred to the standing master for adjudication. This would not be the case if any decree *pro confesso* or similar proceeding was contemplated.

2. An exception is filed by the petitioner to the report of the master on the ground that the testimony taken does not accompany the report. It is certainly proper that the evidence taken should accompany the report of the master. It is the better, and probably the usual, practice that this should be done. It is implied in rule 83 of this court in providing that an exception shall refer to the specific evidence upon which it relies. It seems, however, that, salutary as this practice would be, it is a practice which has not obtained here with regard to masters' reports. They frequently give a résumé of the evidence, but the testimony taken is not generally made a part of it, although ultimately, in connecton with all papers of a master, it is filed in the clerk's office, and so is accessible. The reason for this perhaps loose practice is in order to save the time and expense of transcribing and filing.

While the better practice is to transcribe and file the evidence as part of the report, it cannot be held, under the circumstances, to be error in the master if he does not do so, unless a motion or other application is made to him to that effect. It does not appear that the petitioner made any such application. In point of fact, whatever wrong there might be in this connection has been waived and cured by the petitioner himself, in that he has handed to the court, upon the hearing of this exception, the part of the evidence upon which he relies in the matter.

3. The standing master finds and reports that, just as Joaquina Coll had no right to cancel the lease, so she was equally without authority to make it originally. This would seem to

Welch & Co. v. Central San Cristobal.

show two different findings upon this point by the two successive masters. It would seem that the findings of Master Brown was not excepted to, and so would not control the court as a matter of precedent, the confirmation of the report not excepted to not amounting to anything in that regard. Nevertheless, it would seem that such a report should ordinarily fix the law of the particular case, although it might not be a precedent in some other case. Moreover, the reasoning of Special Master Brown upon this point appears to be sound. A minor may be helped by unauthorized acts of his guardian, although he cannot be prejudiced by the unauthorized acts of his guardian. It is unnecessary to make any further reference of the claim, however, because there is another view which is probably controlling.

4. Whether the lease was authorized or unauthorized in its making, this court had, and exercised, the power to direct the receiver to cancel it for the benefit of the fund in court. This power exists, regardless of whether the parties affected be adults or minors, and, indeed, a court of equity as *parens patriæ* has special powers and duties in regard to the property of minors themselves. The only question would be whether the receiver promptly exercised the right which was given him. This is largely a question of fact, which was contested by the parties before the master, and as to which the master was in better condition to decide than the court. Not only is the presumption in favor of the finding of the master upon question of fact, but this is proper, because, like a jury, he has the witnesses before him and can judge better their credibility than the court which only sees the written report of the proceedings afterwards. In point of fact, it would seem that the receiver did about all that

could be expected of him under the circumstances.  He not only notified, but had a distinct understanding with, the only representative there was of the minor, and it was found by the master that he gave sufficient notice otherwise of his proposed cancelation.  This was at the expiration of the harvesting of the current crop.  It is a general principle of law that an away-going tenant has a right to take off his crop, and in the case at bar, while it was not the actual subtenant who gave such notice, it was the tenant in chief, who had made advances and was otherwise interested in the current crop.  This took up several months, but under the circumstances cannot be said to be an unreasonable length of time within which to exercise the option given by the court.  There is no period fixed by law for expressing such acquiescence or cancelation.  It varies with the circumstances of the different cases, and in the case at bar the time would seem to be reasonable.  The fact that the cattle of the receiver necessarily passed over his property jutting out between other pieces represented by the receiver cannot be held to be of any great weight.  The election was to be exercised, not by the cattle, but by the receiver, and what actually happened does not imply any conscious election by the receiver to retain the lease.

The other grounds of exception need not be discussed at length.  It follows that the exceptions are overruled, and the report confirmed.

It is so ordered, and a decree will be entered accordingly.